In the Matter of the Application of EASTERN ROCK PRODUCTS, INC., Petitioner, for a Peremptory Mandamus Order against AUGUSTUS H. MAYER, as Treasurer of Oneida County, Respondent.

Supreme Court, Oneida County, July 14, 1930.

*Dunmore, Ferris & Dewey [Leonard Ferris* of counsel], for the petitioner.

*Harry N. Harrington,* for the county treasurer, Augustus H. Mayer.

*Lee & Judson [William R. Lee* of counsel], for the county superintendent of highways, Arthur J. O'Brien.

DOWLING (WILLIAM F.), J. This is a proceeding instituted by Eastern Rock Products, Inc., for a peremptory order of mandamus, to compel Augustus H. Mayer, as treasurer of Oneida county, to pay for materials purchased from it by County Superintendent of Highways Arthur J. O'Brien, pursuant to section 320-b of the Highway Law (added by Laws of 1929, chap. 362), consisting of sand and gravel, of the agreed price of $591.53.

Between the 9th and 16th days of June, 1930, Arthur J. O'Brien, as superintendent of highways of the county of Oneida, ordered sand and gravel from the petitioner for use in the construction of a highway in the town of Marcy, Oneida county, N. Y., at the agreed price of $591.53, subject to a discount of $29.40, if paid prior to July 9, 1930. On the 27th of June, 1930, the said county superintendent of highways, by his assistant, H. C. Seubert, in accordance with subdivision 10 of section 320-b of the Highway Law (added by Laws of 1929, chap. 362), prepared a voucher on the form prescribed for his office by the Department of Audit and Control of New York State, showing the value of said materials so furnished, and a verified certificate showing that said materials so furnished were in accordance with specifications, and said county superintendent of highways duly filed the said voucher with the respondent Mayer.

On the 1st of July, 1930, petitioner demanded payment of said account from said respondent, who refused to pay petitioner the amount of said voucher, upon the advice of Mr. Harry N. Harrington, county attorney of the county of Oneida, his refusal being based upon the ground that the purchasing agent of the county of Oneida was the only official clothed with power to purchase the said materials furnished by the petitioner herein.

The question for determination is as to which of these officials is empowered to purchase the supplies for highway construction under section 320-b of the Highway Law (added by Laws of 1929, chap. 362).

Section 320-b of the Highway Law became effective January 1, 1930. This enactment provides a new plan for the construction of certain highways in counties, with State aid, taking authority, in that respect, from the towns and placing it under the county, with the county superintendent in charge of the work, and the county treasurer in charge of the funds.

Under this plan, the board of supervisors of any county, in lieu of proceeding with the construction and improvement of a highway or highways, under sections 320* or 320-a† of the Highway Law, or under the general or special law governing construction or improvement of highways, other than county highways, may appropriate and contribute to the State aid fund an amount to be applied to the construction or improvement of such highway or highways, under the provisions of subdivision 2 of section 320-b (added by Laws of 1929, chap. 362).

If the county elects to make such an appropriation the State will pay, for the construction or improvement of such highway or highways, an amount equal to that appropriated by the board of supervisors, except that no county shall receive from the State, in any one year, an amount exceeding thirty dollars per mile for the total mileage of the highways in such county, exclusive of cities and incorporated villages, not including State and county highways.

Pursuant to this permissive feature in the statute, in 1930 the board of supervisors of Oneida county appropriated and contributed to the State aid fund the sum of $60,000 for the purpose of constructing and improving the highways aforementioned. Thereupon the State contributed to said fund an equal amount. In addition to the $60,000 contributed by the State, the State remitted to the county, for said fund, the registration fees, fines and penalties, as provided in section 73 of the Vehicle and Traffic Law,‡ and the motor fuel tax, as provided by article XII-A of the Tax Law (added by Laws of 1929, chap. 364). There was also in the hands of the treasurer a balance from the 1929 fund. These funds were all deposited with the county treasurer of the county of Oneida, who is made, pursuant to the statute, custodian and disbursing officer thereof, as an agent of the State.

---

* Amended by Laws of 1929, chap. 362.—[Rep.

† See Laws of 1923, chaps. 426, 430; Laws of 1926, chap. 249; Laws of 1927, chap. 452; Laws of 1928, chap. 167; Laws of 1929, chap. 362.—[Rep.

‡ See, also, Laws of 1929, chap. 362, amending subd. 4.—[Rep.

The condition of this fund, in the hands of the respondent, on July 1, 1930, was as follows:

| | | |
|---|---:|---:|
| 1929 balance from section 320-b | $35,455 | 74 |
| Motor vehicle registration fees, etc | 148,905 | 45 |
| Motor fuel tax | 83,887 | 14 |
| State contribution | 58,770 | 00 |
| County contribution | 60,000 | 00 |
| Interest | 629 | 96 |
| Total | $387,648 | 29 |

Of this total, the county of Oneida directly contributed $77,727.87, plus interest earnings, according to the affidavit of the county treasurer.

It is estimated that the revenues from registration fees, etc., and gasoline tax, plus contributions from State and county, in 1930 will amount to approximately $600,000. Of this sum, the county of Oneida will contribute, for the year 1930, $60,000. This is a substantial sum of money and the treasurer of the county should not be left in doubt as to which of the officials is charged with the duty of spending said moneys for the purchase of supplies in the construction and improvement of said highways.

The treasurer maintains that the purchasing agent alone has that responsibility. Petitioner and the county superintendent contend to the contrary.

Under section 219 of article XII-B of the County Law (added by Laws of 1921, chap. 243), the purchasing agent of the county " shall make all purchases, and all contracts for supplies, of every nature, for the county or for any county department, office, official, building or institution, or for which the county may in any event be liable." In case any single purchase or contract shall involve an expense exceeding $500, it shall be made from or let to the lowest responsible bidder.

The purchasing agent shall, upon the first day of each month, furnish to the board of supervisors, and to the county comptroller, a detailed statement showing, up to a certain day of the preceding month, all purchases or contracts made by him, quantity, price and total charge and all supplies delivered and on hand and to what official department or institution delivered. The county comptroller shall not audit or pay any bill for supplies, unless it shall fully appear that such supplies were ordered by the purchasing agent, and a bill therefor, duly verified, be presented to the said comptroller by the purchasing agent, indorsed with his approval. The purchasing agent immediately after making a purchase of

any goods, shall deliver a certified copy of such order to the county comptroller and to the head of the department affected thereby. The records and accounts of the purchasing agent and all supplies or stores, of which he may be the custodian, shall be subject to investigation, audit and control by the county comptroller in the manner prescribed by law.

Manifestly, the county purchasing agent has jurisdiction over all purchases for which the county may, in any event, be liable, or for the payment of which the county shall be liable. A county purchasing agent in no sense is an agent of the State. His duties, activities and responsibilities are confined entirely to the county. He is an appointee of the board of supervisors and is charged with whatever powers the board of supervisors has in the way of audit and purchase.

No reference is made to the county purchasing agent in any pertinent provision of the Highway Law. Hence, he can derive no power or authority from that source.

The county superintendent of highways, while nominally an official of the county, has long been, at the same time, under sections of the Highway Law, an agent of the State.

Under section 32 of the Highway Law the State Commission* may remove a county superintendent of highways for inefficiency, neglect of duty and misconduct in office. If removed, the Commission shall appoint a successor until the board of supervisors shall appoint a new county superintendent of highways to fill the vacancy caused by such removal.

Under subds. 2 and 3 of section 33 of the Highway Law (as amd. by Laws of 1911, chap. 646), the county superintendent of highways, whenever directed by the State Commission, shall visit and inspect the highways and bridges in every town of his district at least once a year and direct the town superintendent how best to repair, maintain and improve such highways and bridges. When requested by the State Commission, he is to examine various formations and deposits of gravel and stone in his district or county, and submit samples and make a written report thereon. Under subd. 6 (as amd. by Laws of 1920, chap. 559) he is obliged to report to the State Commission annually on or before January first of each year in relation to the highways and bridges in his district and in such form as may be prescribed by the Commission. Additional reports shall be made from time to time when requested by the Commission in respect to such matters as may be specified by it. Under sub-

---

* The authority now vests in the Department of Public Works acting by the Superintendent of Public Works by virtue of chapter 88 of the Laws of 1927.— [REP.

division 8 of the same section he must report to the Commission any irregularities of the contractor, of construction on the State highways or any failure upon his part to comply with the terms of the contract. Subdivision 10 of the section (added by Laws of 1916, chap. 217) requires him to perform such other duties as may be prescribed by law or the rules and regulations of the Commission.

The county superintendent of highways acts under the authorization and instructions of the State Commission in the performance of many of his duties and for long has been an agent of the State Commission.

Every step of procedure involved in construction wherein State aid is given must have the approval of the State Superintendent of Public Works and all plans and construction must be in accordance with the requirements prescribed by him. He is authorized and directed to stop all such construction if he is not satisfied with the manner in which such roads are being constructed.

Construction under section 320-b of the Highway Law (added by Laws of 1929, chap. 362) may be either by contract or direct employment of labor and the purchase of material, or both. In either event, the county superintendent acts for the State Superintendent, makes the necessary contracts and purchases and is in charge of the work. If the work is to be done by contract, it must be with the approval of the chairman of the board of supervisors and the contract must be let according to the provisions of section 130 of the Highway Law (as amd. by Laws of 1928, chap. 648),* which section relates to contracts for the construction or improvement of highways by the Superintendent of Public Works of the State, and in applying such section the county superintendent shall have the powers and duties of the Superintendent of Public Works, as therein prescribed. Under section 320-b of the Highway Law (added by Laws of 1929, chap. 362), it is designed that the county superintendent should be the agent for the State Commission of Highways and represent the State in the matter of the construction and improvement of such highways.

The Legislature empowered the county superintendent of highways to make contracts for the construction and improvement of highways or to carry on said work by day labor. The Legislature also provided that no payments can be made by the county treasurer, either for work or materials, or to contractors, except there shall first have been filed with him a voucher, with verified certificate of the county superintendent of highways, showing the work performed, materials furnished, etc.

* See, also, Laws of 1923, chap. 429; Laws of 1929, chap. 362.— [Rep.

Respondent Mayer contends that notwithstanding the fact that the county superintendent of highways may be the agent of the State in the above respects, nevertheless, he is given no power under section 320-b to purchase materials. Subdivision 8 of section 320-b of the Highway Law (added by Laws of 1929, chap. 362) provides that " *all or any part of such construction may be done by contract or by direct employment of labor and purchase of material, or both.*" Can it be said that the Legislature burdened the county superintendent of highways with the responsibility of letting contracts, or doing the work by day labor, and of certifying to the work done, materials furnished, etc., and intended to embarrass him by compelling him to apply to the county purchasing agent whenever he had necessity of purchasing any kind of material for immediate delivery for the performance of the work in hand? I think not.

It is to be noted that the power thus given to the county superintendent of highways to employ labor is coupled with the power to purchase materials. Employment of labor and purchase of materials are corelative and are made so by the conjunction "and" and by the context of said subdivision.

The trend of the development of highway legislation in this State has been consistently towards lodging the control thereof in the State, by taking it away from towns, in particular, and counties, to some extent, and for the purpose of convenience making the county superintendents of highways and county treasurers agents of the State in the carrying out of road development. The State not only assumed the responsibility of doing the work of developing its highways, but has become largely responsible for defraying the cost thereof, and there is nothing anywhere in the Highway Law which indicates an intention upon the part of the State that county comptrollers or purchasing agents are to have any connection with purchases or materials for use in highway development and improvement.

The average purchasing agent knows nothing about the subject of road building, and is not expected to know anything about it, and, therefore, is not equipped, either by experience, or by personnel in his office, to undertake the duty of purchasing supplies for road construction or improvement. This is a highly specialized business and supplies should be purchased by men trained and experienced in highway building.

The respondent strongly urges that to allow any public officer to purchase supplies on a large scale and to audit his own bills is not good business and is not safeguarding the public interest and this, without intending to cast any reflections upon the integrity of Mr. O'Brien, and that the Legislature, when it enacted section

320-b, never intended such a result. There is ample precedent for conferring such power upon the county superintendent of highways. By section 215, article 12-A, of the County Law (added by Laws of 1915, chap. 38, as amd. by Laws of 1927, chap. 64) it is provided that the board of supervisors of any county may appoint a county auditor and may direct him also to act as county purchasing agent, in which event, he would, of course, audit his own bills. Moreover, boards of supervisors, for time out of mind, have made purchases and audited their own bills.

Respondent also contends that he has no right to pay petitioner's claim unless it shall first be audited by the county comptroller of Oneida county.

The county comptroller is not concerned with the audit or payment of any bill for supplies, except those ordered by the purchasing agent. Bills for supplies purchased by the county superintendent of highways under section 320-b of the Highway Law (added by Laws of 1929, chap. 362) do not come within this class and, therefore, need not be audited by the county comptroller.

Section 320-b of the Highway Law, by implication, makes the county treasurer the auditing official for bills incurred by the county superintendent under said section.

Section 235 of article 14-A of the County Law (added by Laws of 1909, chap. 466, as amd. by Laws of 1920, chap. 835) prior to its amendment in 1920, by chapter 835, provided: " *The county comptroller shall perform such other and further duties as may from time to time be prescribed by law or by resolution of the board of supervisors, not inconsistent with this act or other laws of the State.*"

If the county desires an investigation as to the validity of the claims vouched for by the county superintendent of highways to the county treasurer, under section 320-b of the Highway Law (added by Laws of 1929, chap. 362), there is no reason why the board of supervisors cannot pass a resolution directing the county comptroller to make such investigation even though he has no power of audit of such claims. Furthermore, the county treasurer, if in doubt about the validity of a claim vouched for by the county superintendent, would be within his rights to withhold payment until he had made an investigation of such claim. The county comptroller could do no more.

The contention of the respondent that, in view of the fact that the county contributes to this State aid fund, the fund is, in part at least, county money and can be expended for purchases only when they are made through the county purchasing agent, is untenable.

The intention of the Legislature was to create a State aid fund

for the development and improvement of certain highways in each county, leaving it to the counties as to whether or not they desired to contribute to such fund. There is nothing mandatory upon a county in making such contribution. It may or may not contribute, as it pleases. When it elects to appropriate money and does appropriate it and pay it over to said fund, the money so appropriated and paid over loses its identity, as strictly county money, and becomes a part of the State aid fund and the county loses direct control over it, as the county treasurer harbors it and pays it out as an agent of the State. Hence, when this money is used for the purchase of supplies and labor in road building, it is not strictly county money and the supplies and labor are not being purchased by or for the county as such. Therefore, the county purchasing agent and the county comptroller have no obligation in respect to the disbursing of said moneys.

From the foregoing, we must conclude that it was the purpose of the State to create a more economical and workable system for the construction of said highways in counties.

County superintendents of highways are usually capable engineers, possessed of the requisite skill and experience to enable them to intelligently discharge the duties of their office, and they have the office personnel for doing so.

There is sufficient obscurity in the language of section 320-b of the Highway Law (added by Laws of 1929, chap. 362), as to the right of the county superintendent to make purchase of material, also in the wording of the statutes creating the position of purchasing agent and county comptroller, relative to purchases of supplies for highway construction and improvement, to justify the respondent in withholding payment of the claim in question until he should have the benefit of a court decision for his guidance.

I think that the county superintendent of highways alone has the power under section 320-b of the Highway Law (added by Laws of 1929, chap. 362) to make purchases of supplies.

The facts are not in dispute here. Under those circumstances, only questions of law are presented for determination. The petitioner, therefore, is entitled to a peremptory order of mandamus, as prayed for in its petition, but under the existing facts, no costs are allowed.

Ordered accordingly.